## Ivory Low *versus* Lucius Allen.

L. upon dissolution of a copartnership with A., received as the consideration for his interest in the concern, the notes of the latter, with a mortgage on the late co-partnership property, "to secure L. for his liability on the partnership debts, for his liability to pay any other debts of A., and for the ultimate payment of the notes." Afterwards the property was sold, with the consent of the mortgagee, and a portion of the proceeds came into his hands, with which he paid the co-partnership liabilities. The Court *held* that, by the tenor of the mortgage, it was fairly to be inferred that the avails of that property were to be appropriated, *first* to indemnify the plaintiff against his company liabilities, and *then* any balance which might remain should be applied to the payment of the notes.

ON FACTS AGREED.

ASSUMPSIT on four promissory notes of $500, each, dated Feb. 14, 1839, and witnessed. The writ was dated Sept. 12, 1851, and contained a count for money paid, laid out and expended. Plea, the general issue, with a brief statement of payment of the notes declared on, and the statute of limitations as to any claim under the money count.

The parties had been co-partners in the stage business, and at the date of said notes dissolved the company, Allen buying out the plaintiff, and giving these notes for the stage property. He then mortgaged to plaintiff the property so purchased; the material provision of the mortgage, after the recital, was as follows:—

"Now, therefore, in order to secure the said Low for his liability on said partnership debts and for his liability to pay any other debts for me, and for the ultimate payment of the above described notes, or any other debts I may be owing the said Low, I hereby sell, transfer and convey and mortgage to the said Low all the stage property, now in the line from Augusta to Anson, consisting of twenty-eight horses, [schedule of other property is omitted,] to have and to hold the same, to him, the said Low, until the above described debts and liabilities shall be paid and fully discharged."

In that same year defendant sold the mortgaged property, with the consent and approbation of plaintiff, on credit, and took notes therefor running to plaintiff, which were given to him at the time of the sale. The amount was $4000, in several notes, the last one or that on the longest time being due August 1, 1841. They were all paid to plaintiff as they fell due.

After the dissolution the plaintiff paid sundry debts of the company, which belonged to the defendant to pay.

The agreed statement set forth the mutual claims of the parties against each other, and provided that the Court should draw inferences of fact as a jury might, and render judgment by nonsuit or default as the law required.

*J. H. Drummond*, for plaintiff, contended that, the notes being witnessed, the introduction of them makes a *prima facie* case, and the burden of proof is on the defendant.

*S. Heath*, for defendant, argued, —

1. That the notes in suit had been paid. The property, mortgaged to secure the payment of these notes, was disposed of in the same year they were given, with the consent of plaintiff, and he took the entire securities therefor in his own name, and collected them as they fell due. In *law* this was a payment of so much secured by the mortgage. The four notes sued were not at that time all due, but they were treated by the parties as due.

2. No action can be maintained on the notes, as the consideration for them has failed. They were given for the property which plaintiff has taken back, or which he has sold and taken the avails.

*Drummond*, for plaintiff, in reply.

May, J.—In defence of this action, it is contended, that the consideration of the notes declared on has failed, and that they have been paid; and that the plaintiff cannot recover under the money count, because all claims under that are barred by the statute of limitations. It is conceded by the plaintiff's counsel, if he can recover at all, it must be upon the notes in suit. They bear date February 14, 1839, and were witnessed when made. There is no evidence of any dealings or promise, express or implied, between the parties within six years preceding the date of the writ. It is clear, also, that the facts in the case show no failure of consideration, which takes away the plaintiff's right to recover.

The only question is, whether the notes have been paid. The parties were, prior to the giving of the notes, partners in the business of running a stage. The co-partnership was dissolved at the time said notes were given, and they were given for the plaintiff's interest in the company property; the plaintiff at the same time taking back a mortgage of said proper-

ty, in which it was agreed that the defendant should pay and discharge all the debts due from said co-partnership and save the said Low harmless from the same. Said mortgage was made " *in order to secure the said Low for his liability on said partnership debts*, and for his liability to pay any other debts of said Allen, and for the ultimate payment of the notes in suit;" and the property was to be held by the plaintiff *until the above described debts and liabilities* should be paid and fully discharged.

The notes given to the plaintiff were four in number, of $500 each, and the last was payable in July, 1841.

Within the year 1839, the defendant, with the consent of the plaintiff, sold the mortgaged property for $4000, and took notes therefor, running to the plaintiff, the last of which fell due August 1, 1841. It appears that the plaintiff received these notes as so much in discharge of his claims against the defendant *in conformity with the provisions of said mortgage;* and they were all paid to the plaintiff as they fell due. It does not appear that the plaintiff had paid any thing towards the company liabilities when he received these notes; but after the dissolution of the co-partnership, he paid sundry such debts belonging to the defendant to pay.

On the 13th of January, 1841, the parties called on Stephen Stark, who had their papers, *to state the condition of their matters*, that they might make an adjustment. At this time said Stark drew up a memorandum, to the correctness of which the parties assented; from which it appeared that the amount of company debts which the plaintiff had then paid was $2195,75, and that the amount then due on notes in suit was stated to be $2229,67. The notes received for the mortgaged property and interest then amounted to $4209,19, of which the plaintiff had been paid $2180,78.

It appears from this statement of Mr. Stark, that no deduction was made from the amount of the notes now in suit, by reason of $400, which the plaintiff had indorsed on the first note, under date of January 10, 1840, as money collected on note against the Augusta and Anson Stage Company; but this

sum, with interest, was included in the above sum of $4209,19 which the plaintiff had received in money and notes, for the mortgaged property aforesaid. At the time when Mr. Stark made said statement no settlement between the parties appears to have been made. It was a mere looking over that they might make an adjustment. The plaintiff still retained his notes; and no receipts or obligations were given for the moneys which had been paid or received. Subsequently the plaintiff, from time to time, paid other outstanding company debts, and the parties, on July 28, 1845, again called on Mr. Stark, and he made a new statement of their affairs in writing, which was assented to by both parties as correct, and which, being made upon the basis of the balance of the first statement after correcting some slight errors therein and adding to said balance, then found in his favor, the sums subsequently paid by the plaintiff, shows that there was then due to the plaintiff, either upon the notes in suit or for moneys paid in pursuance of his liabilities, the sum of $1538,30.

The question we are now called upon to determine, is whether by operation of law, or the acts or agreement of the parties, the moneys which the plaintiff received from the mortgaged property, have been or should be appropriated to the payment of the notes in suit or of the other claims. This is a question not free from difficulties. Not but that the law in regard to the appropriation of payments is well settled, so far as regards the rights of either or both parties in making such appropriations, and where the parties, or either of them, have not made any; but because there is a want of certainty as to the intention of the parties in the present case, as developed in their agreements and acts. Considering however, that the mortgaged property was originally first liable for partnership debts, and that the plaintiff's liabilities for these debts are first mentioned in the mortgage, as secured, while the *ultimate* payment of the notes is only provided for, we think it is fairly to be inferred that the avails of that property, if disposed of by the plaintiff, or with his consent, for the purposes mentioned in the mortgage, were to be appropriated,

first to indemnify the plaintiff against his company liabilities, and then any balance which might remain should be applied to the payment of the notes. When the mortgaged property was sold and the notes therefor taken by the plaintiff, no different intention of the parties was manifested. No indorsement was made upon the notes in suit, and they were not delivered up to the defendant as paid. On the contrary, the notes so taken for the mortgaged property, as the case finds, were taken as so much in discharge of the plaintiff's *claims* against the defendant, in conformity with the provisions of said mortgage. As the notes in suit do not appear to have been then due, and as one only could have been due, and there being no evidence that any payments of the company debts had at that time been made by the plaintiff, we think it is apparent that the notes so taken, and the money to be received upon them, were to be held and appropriated in the manner contemplated in the mortgage as before stated. The fact that the $400, so received, was indorsed upon the first note in suit, would seem to indicate a different understanding; but this we think is controlled by the other considerations suggested, and by the fact that the plaintiff still holds the notes without any other indorsements thereon, and, so far as appears, without the defendant ever having claimed to have said notes given up, or any indorsement made upon them. What was done by Mr. Stark, and what took place before him, does not seem to have resulted in any thing beyond a mere exhibit of the state of affairs between the parties; and, in the reckoning made by him in January, 1841, the case finds that both parties considered that the funds then in the plaintiff's hands were to be appropriated in conformity with the provisions of the mortgage.

In view of all the facts, we are of opinion that the money received as the avails of the mortgaged property, excepting the $400, which has already been indorsed on the first note, should be applied first to the payment of the plaintiff's claims for money paid, and the residue upon the notes in suit; each party allowing interest to the other, until such appropriation

of the moneys in the plaintiff's hands had been made, as the parties seem to have contemplated. Judgment therefore must be entered for the plaintiff, for such sum as shall be found to be due upon the foregoing principles, and the

*Defendant is to be defaulted.*

TENNEY, C. J., and RICE, APPLETON, and CUTTING, J. J., concurred.